IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 2:23-CR-51-001 |
| ) | |
| JONATHAN MORRELL SCOTT, ) | |
| ) | |
| Defendant. ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Kristin G. Bird, Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report ("PSR") prepared in this matter, the United States Probation Office determined the applicable advisory guidelines range to be a term of 12 to 18 months' imprisonment based on a Total Offense Level of 13 and a Criminal History Category of I.

In accordance with § 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. The United States does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation.[1]

For the reasons outlined herein, after consideration of the relevant conduct associated with this crime and the defendant's history and characteristics, as outlined in the PSR, and in accordance with the plea agreement, the United States respectfully submits that a sentence of 12 months is

---

[1] The United States is aware that the defense does maintain two objections to the PSR, neither of which affect the guidelines. The United States will timely file a response to the defendant's objections pursuant to the Court's Sentencing Procedures Order. ECF No. 24.

appropriate, warranted, and not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

I.  **Background**

On April 19, 2023, the defendant was charged with four counts of Making a False Statement During the Purchase of a Firearm, in violation of 18 U.S.C. § 922(a)(6) and 18 U.S.C. § 924(a)(2).

On July 26, 2023, the defendant entered a guilty plea to Count Three of the Indictment before the Honorable Elizabeth W. Hanes, United States District Court Judge. He is scheduled to appear before this Court for sentencing on December 12, 2023.

II.  **Position on Sentencing and Argument**

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

Under 18 U.S.C. § 3553(a), when imposing a sentence that is sufficient but not greater than necessary, the Court shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed (to reflect the

2

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner), (3) the kinds of sentences available, (4) the sentencing guideline range, (5) any pertinent policy statement issued by the Sentencing Commission, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.

    A.    <u>Nature and Circumstances of the Offense</u>

In 2022, the Department of Homeland Security obtained information identifying Colin Costello ("Costello") as a significant methamphetamine trafficker in the Eastern District of Virginia. *See United States v. Colin Costello*, E.D. Va. Case No. 2:22-cr-126-02. On April 22, 2022, based on the information obtained during the course of the investigation, law enforcement executed a state search warrant on Costello's Virginia Beach residence. *Id*. at ECF No. 87. Law enforcement recovered approximately 436 grams of suspected methamphetamine, other controlled substances, packaging materials, scales, and approximately fourteen firearms. *Id*.

Once the firearms were recovered, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") joined the investigation. ATF traced each of the firearms to determine who the original purchasers were so they could investigate how Costello – a prohibited person – unlawfully came into possession of the firearms. The trace reports revealed that the following four firearms had been purchased by the defendant on the following dates:

- November 16, 2020: Taurus Pistol, Model: PT1911, Caliber: .45 ACP;

- December 18, 2020: Girsan Pistol, Model: REGARD GEN 4, Caliber: 9mm;

3

- August 19, 2021: Bersa Pistol, Model: THUNDER 380, Caliber .380 ACP; and

- October 12, 2021: Glock Pistol, Model: 17, Caliber 9x19.

ECF No. 22; PSR ¶¶ 11, 13-15.  The investigation further revealed that the defendant was never the actual purchaser of these firearms; rather, Costello was the intended recipient.  ECF No. 22. Furthermore, Costello supplied the money for the purchase of each of these firearms.  PSR ¶¶ 11, 13-15.

To complete each purchase, the defendant was required to complete an ATF Form 4473. This form immediately notifies individuals that the information requested will be used to determine whether their receipt of a firearm is lawful, and it spells out the penalties for certain violations of the Gun Control Act.



During each purchase, and in order to deceive the seller, the defendant falsely indicated that he was the actual purchaser of the firearms by checking "Yes" to the Question 21.a., which states: "Are you the actual transferee/buyer of the firearm(s) listed on this form? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person.  If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**"  PSR ¶¶ 11, 13-15.



Additionally, prior to concluding each purchase, the defendant signed his name directly below the certification statement on ATF Form 4473, which provides in relevant part, that "I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering 'yes' to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law …" The certification goes on to inform the purchaser that any "false oral or written statement … with respect to this transaction, is a crime punishable as a felony under Federal law…"

B. <u>History and Characteristics of the Defendant</u>

The defendant is 36 years old and enjoys fairly good health. PSR ¶ 54. He does have some health conditions, but he has been able to manage them without medical intervention. *Id*. He had a difficult upbringing that was marred by poverty, neglect, substance abuse, physical and sexual abuse, and poor living conditions. PSR ¶¶ 45-46. He reported to Probation that by the age of 15, "he was encouraged to provide for himself by any means necessary, including criminal activity."

5

PSR ¶ 45.

The defendant suffered from a learning disability and did not graduate high school. PSR ¶¶ 55, 67. However, he does have special skills in construction and operating a forklift. PSR ¶ 68. He has also been able to obtain and maintain regular employment for nearly all of his adult life. PSR ¶¶ 70-71.

The defendant has also suffered from substance abuse at various times in his life. He has reportedly used crack cocaine, marijuana, molly, ecstasy, Xanax, Adderall, psilocybin, and he has engaged in huffing. PSR ¶¶ 59-65. He has also suffered from significant alcohol abuse since he was a child. PSR ¶ 58. Recently, he sought treatment at the Virginia Beach Psychiatric Center, but he checked himself out against medical advice. PSR ¶ 57. According to the Center, the defendant would benefit from medication management, behavioral management, and 12-step programming. *Id*.

Probation was able to obtain some information related to the defendant's relatively minor criminal history. However, he was placed on community diversion and good behavior for convictions that could not be found, likely due to their age. PSR ¶¶ 36-38. His placements were discovered only because of his violations of the dispositions. In 2008, the defendant was convicted of a Community Diversion violation, for which he received ten days in jail. PSR ¶ 36. In 2010, he was convicted of a Good Behavior violation. PSR ¶ 37. He received an active sentence of just a few days in jail. *Id*. Then in 2011, his suspended sentence/probation was revoked and he was ordered to serve four days in jail. PSR ¶ 38.

In 2020, law enforcement responded to a shots fired call. PSR ¶ 39. After speaking with the witness, law enforcement went to a residence they identified as being related to the call. *Id*. They encountered the defendant and two other individuals at the residence. *Id*. After executing a

search warrant, law enforcement recovered two firearms and a glass smoking device. *Id*. The defendant was ultimately arrested and charged with brandishing a firearm. *Id*. He was found guilty of disturbing the peace and sentenced to twelve months of unsupervised probation and six months in jail, the latter of which was suspended. Notably, the defendant was on unsupervised probation when he purchased three of the four above-referenced firearms.

C. <u>Other Factors to Be Considered Under Section 3553(a)</u>

General and specific deterrence, the seriousness of the offense, promoting respect for the law, providing just punishment, and public safety all support a sentence of 12 months' imprisonment in this case.

The defendant's offense was quite serious, and it was blatantly violative and disrespectful of laws designed to protect our communities. His false and misleading statements allowed him to circumvent federal and state background checks, which keep firearms out of the hands of criminals who are precluded by law from buying them themselves. The concerns these laws are designed to address are not just theoretical, as evidenced by the facts of this case. The defendant stepped outside the confines of the law to purchase firearms for a prohibited person – someone he calls a friend -- who was also engaged in the drug trade. It cannot be ignored that these firearms were found in a house along with nearly half a kilogram of methamphetamine. This case serves as a tangible example of the very dangers laws aimed at straw purchasing attempt to prevent.

In July 2000, the ATF partnered with the National Shooting Sports Foundation, the Department of Justice, and the Office of Justice Programs to launch a national campaign called "Don't Lie for the Other Guy."[2] This educational campaign was designed to prevent and discourage illegal "straw man" purchases of firearms. *Id*. The goal of the "Don't Lie for the Other

---

[2] https://www.dontlie.org/history.cfm.

Guy" program is to reduce firearm straw purchases at the retail level and to educate would-be straw purchasers of the penalties of knowingly participating in an illegal firearm purchase.[3] This program was developed in part because the denial of guns to prohibited persons has been deemed critical in preventing violent crime and protecting our communities. *Id*.

In fact, these offenses are considered so serious that new laws were passed that specifically criminalize straw purchasing and increased the maximum punishment. On June 25, 2022, the President of the United States signed the Bipartisan Safer Communities Act into law. Part of that Act added Sections 932 and 933 to Title 18 of the United States Code. Moreover, through the enactment of these statutes, the maximum penalty for this conduct was raised from ten years to fifteen years. While these new statutes do not apply to the defendant's conduct, the United States highlights them as evidence of a recent reiteration of the importance of these laws. Further, by increasing the statutory maximum, Congress has sent a message that violations of these laws can be met with significant consequences.

The United States has been tasked with disrupting the tide of narcotics trafficking and violent crime that has plagued our communities. Holding accountable those who provide weapons to prohibited persons – particularly to those engaged in these types of criminal activity -- is paramount, and merely making a defendant a felon is insufficient. The purpose of charging the defendant and convicting him of a felony is so ***he*** can no longer legally purchase or possess firearms; because, through his conduct, the defendant has signaled that he is not someone we can trust with those rights.

A period of incarceration is needed to account for the fact that the defendant deliberately and repeatedly made choices that put others at risk. As the Fourth Circuit has recognized, "[p]laced

---

[3] https://www.atf.gov/firearms/dont-lie-other-guy.

in the wrong hands, firearms present a grave threat to public safety, and for this reason, the Anglo-American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous." *Carter*, 669 F.3d at 415; *accord United States v. Carpio-Leon*, 701 F.3d 974, 980 (4th Cir. 2012) ("[H]istorical evidence support[s] the notion that the government could disarm individuals who are not law-abiding members of the political community."). Moreover, the defendant engaged in this reckless and dangerous conduct despite having been put on notice that there could be significant negative consequences.

The United States certainly cannot dispute that many defendants convicted of this type of offense are sentenced to probation. However, that does not mean probation is the only appropriate sentence, or that courts do not sentence defendants to an active period of incarceration when warranted. For instance, in 2021, United States District Judge Roderick C. Young, sentenced a defendant who transferred a firearm to a prohibited person, in violation of 18 U.S.C. § 922(d). ECF No. 34, *United States v. Portia Laurice Carrington-Green*, 2:20-cr-00079-RCY-RJK (E.D. Va. May 5, 2021). Although convicted for transferring the firearm, she too lied on the ATF Form 4473 in order to complete the purchase. She eventually admitted to law enforcement that she purchased the firearm for her brother – a man who had recently been released from prison after serving sentences for violent offenses. She also had no criminal history, was gainfully employed, and claimed her brother simply wanted the gun for protection. Finally, the Court found that the applicable guidelines range recommended a sentence of 10 to 16 months. The Court ultimately ordered the defendant to serve 12 months and 1 day in the Bureau of Prisons.

For all the reasons outlined above, the government respectfully disagrees with the defendant's assertions that probation is sufficient to accomplish the goals outlined in 18 U.S.C. § 3553(a), or that there are mitigating facts not accounted for by the guidelines which justify such

a significant downward variance.

**III.   Conclusion**

Taking into consideration the defendant's conduct, his personal history, and all the other 3553 factors, the United States respectfully recommends that a sentence of 12 months' imprisonment is appropriate and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

                              Respectfully submitted,

                              Jessica D. Aber
                              United States Attorney

By:      /s/
                              Kristin G. Bird
                              Assistant United States Attorney
                              United States Attorney's Office
                              101 West Main Street, Suite 8000
                              Norfolk, VA 23510
                              Office Number: 757-441-6331
                              Facsimile Number: 757-441-6689
                              Email: kristin.bird@usdoj.gov

**Certificate of Service**

I certify that on November 28, 2023, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

I further certify that on November 28, 2023, I sent by electronic mail a true and correct copy of the foregoing to the following:

**Nicole Pender**
United States Probation Officer
600 Granby Street, Suite 230
Norfolk, Virginia 23510

By: _____/s/_____

Kristin G. Bird
Assistant United States Attorney
United States Attorney's Office
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Office:  (757) 441-6331
Fax:     (757) 441-6689
Email:   kristin.bird@usdoj.gov